following the judicial foreclosure of a trust deed is governed by the general 5-year statute of limitations for actions on written contracts in § 25-205. Because First National's deficiency action was brought within 5 years of the judicial sale of the real property, the district court erred in granting the Daveys' motion for summary judgment on the ground that the action was barred as untimely. Accordingly, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.

———————

STATE OF NEBRASKA, APPELLEE, V. BRYAN
VAN RICHARDSON, JR., APPELLANT.
___ N.W.2d ___

Filed May 10, 2013.    No. S-11-921.

1. **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion.
2. **Convictions: Proof.** To sustain a conviction based on information derived from an electronic or mechanical measuring device, there must be reasonable proof that the measuring device was accurate and functioning properly.
3. **Trial: Evidence: Juries: Verdicts: Appeal and Error.** Evidentiary error is harmless when improper admission of evidence did not materially influence the jury to reach a verdict adverse to substantial rights of the defendant.
4. **Trial: Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.
5. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict.

Petition for further review from the Court of Appeals, INBODY, Chief Judge, and MOORE and RIEDMANN, Judges, on appeal thereto from the District Court for Hall County, JAMES D. LIVINGSTON, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Jerry Fogarty for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

We granted the petition for further review of the Nebraska Court of Appeals' decision in which it affirmed the conviction and sentence of Bryan Van Richardson, Jr., in the district court for Hall County for possession of a controlled substance, cocaine, with intent to distribute. The sole issue on which Richardson sought further review was whether there was sufficient foundation regarding the accuracy of a scale used to weigh the cocaine in order to admit evidence of the weight. Because we conclude that the foundation was not sufficient, we reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with directions to reverse Richardson's conviction and sentence and to remand the cause to the district court for a new trial.

## STATEMENT OF FACTS

Richardson was charged with possession of a controlled substance, cocaine, with intent to distribute in violation of Neb. Rev. Stat. § 28-416 (Reissue 2008). The State alleged that the quantity of cocaine involved was between 10 and 28 grams. Section 28-416(7)(c) provides that with respect to cocaine, a violation of the statute is a Class ID felony if the quantity of cocaine involved is at least 10 but less than 28 grams. The offense is a lesser or greater felony depending on the quantity of the controlled substance involved. Evidence of the weight of the cocaine involved is therefore relevant to determine the grade of the offense.

At trial, the State's witnesses included Craig Redinger, who had agreed to work with a drug task force in exchange for the dismissal of a pending burglary charge against him. Redinger testified generally that working with State Patrol investigators

in a controlled buy, he arranged to purchase cocaine from Richardson. Redinger testified that during the purchase, he watched Richardson weigh the cocaine on a digital scale and the scale showed that the cocaine and the baggie in which it was contained weighed 11.2 grams. Richardson objected to this testimony based on "accuracy of the scale" and foundation. The district court overruled Richardson's objection.

The State also called Sarah Pillard, a chemist for the Nebraska State Patrol crime laboratory, as a witness. Pillard tested the substance Redinger purchased from Richardson, and it tested positive for cocaine. She also weighed the cocaine. Pillard testified that she routinely used the crime laboratory's scale and that she had gone through the weighing procedure "[t]housands" of times. She testified that the crime laboratory had its scale calibrated by the manufacturer once a year and that laboratory personnel checked every Friday to make sure the scale was working and would calibrate if necessary. Pillard testified that she followed the usual procedure to weigh the cocaine in this case. The State asked Pillard the weight of the cocaine. The court sustained Richardson's objection to the statement regarding weight based on "lack of sufficient and proper foundation."

The State then questioned Pillard further regarding the scale. Pillard testified that the calibration was checked once a week by one of the chemists in the laboratory and that the calibration would have been checked within at least a week of the time the substance in this case was weighed. She testified that if there was an inconsistency with the calibration, the scale would be taken out of use until the manufacturer came in to repair it. She further testified that during the time she had been at the laboratory, she had never had an issue with the calibration of the scale, and that she was not aware of any issue with the calibration of the scale at the time she tested the cocaine in this case. The State again asked Pillard the weight of the cocaine, and this time, the court overruled Richardson's objection based on "lack of proper and sufficient foundation, foundation contains hearsay and confrontation." Pillard testified that the weight of the cocaine, excluding its packaging, was 10.25 grams.

The jury found Richardson guilty, and it further found that the quantity of the mixture containing cocaine was 10.25 grams. The court entered judgment based on the verdict and sentenced Richardson to imprisonment for 3 to 6 years.

Richardson appealed to the Court of Appeals and asserted that the district court erred when, inter alia, it admitted evidence as to the weight of the cocaine over his objection. Richardson does not seek further review of the Court of Appeals' disposition of his other assignments of error, so they are not detailed herein. The Court of Appeals rejected Richardson's assignments of error and affirmed his conviction and sentence. *State v. Richardson*, No. A-11-921, 2012 WL 4795684 (Neb. App. Oct. 2, 2012) (selected for posting to court Web site).

We granted Richardson's petition for further review.

## ASSIGNMENT OF ERROR

Richardson claims that the Court of Appeals erred when it affirmed the district court's admission of evidence of the weight of the cocaine over his objection that there was not sufficient foundation regarding the accuracy of the scale used to weigh the cocaine.

## STANDARDS OF REVIEW

[1] An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion. *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

## ANALYSIS

We note as a preliminary matter that in rejecting Richardson's arguments regarding evidence of weight, the Court of Appeals noted that although Richardson mentioned both Redinger's and Pillard's testimony, his argument focused on Pillard's testimony. The Court of Appeals therefore considered only Pillard's testimony and Richardson's objections thereto. In support of further review, Richardson again mentions Redinger's testimony, but he makes no argument that the Court of Appeals

erred by failing to address Redinger's testimony. We therefore limit our analysis on further review to Pillard's testimony. However, because we remand for a new trial, we note that if the State again attempts to present testimony regarding the weight of the items shown on Richardson's digital scale, the admissibility of such evidence will be governed by the principles set forth herein with respect to Pillard's testimony regarding weight.

On further review, Richardson asserts that the Court of Appeals erred when it affirmed the district court's admission of Pillard's testimony regarding the weight of the cocaine. We conclude that the State did not present sufficient foundation regarding the accuracy of the scale used by Pillard and that therefore it was error for the district court to admit Pillard's testimony regarding weight and for the Court of Appeals to affirm such admission. We further conclude that the error was not harmless and that it requires reversal of Richardson's conviction, but that Richardson may be retried on remand.

*Foundation Regarding the Accuracy of the Scale
Used to Measure Weight Is Necessary Before
Evidence of Weight May Be Admitted.*

As urged by the State and as reflected by the Court of Appeals' opinion, it appears that there is some uncertainty whether under Nebraska law it is necessary to provide foundation regarding the accuracy of a scale before evidence of weight measured by such scale may be admitted or whether the accuracy of the scale is instead a factual issue to be determined by the jury. We conclude that the adequacy of the foundation regarding the accuracy of the scale is required to be determined by the court before evidence of weight may be admitted.

We note first that certain statutes control the admission of evidence of results obtained using some specific types of tests or measurement devices. See, Neb. Rev. Stat. § 60-6,192 (Reissue 2010) (speed measurement devices); Neb. Rev. Stat. § 60-6,201 (Reissue 2010) (tests to measure alcohol concentration in blood, breath, or urine). However, there is no statute that specifically addresses admission of evidence of weight

obtained using a measurement device such as the scale at issue in this case.

[2] This court has imposed requirements that apply generally to evidence obtained using a measurement device of any sort. See, *State v. Canady*, 263 Neb. 552, 641 N.W.2d 43 (2002) (involving thermometer used to measure temperature of bath water); *State v. Chambers*, 233 Neb. 235, 444 N.W.2d 667 (1989) (involving stopwatch used to measure time). In *Canady*, we stated that "to sustain a conviction based on information derived from an electronic or mechanical measuring device, there must be reasonable proof that the measuring device was accurate and functioning properly." 263 Neb. at 563, 641 N.W.2d at 53 (citing *State v. Chambers, supra*). Although this proposition can be read as pertaining to the sufficiency of evidence rather than the admission of evidence, in both *Canady* and *Chambers*, we treated the requirement of reasonable proof of accuracy and proper functioning of a measurement device as applying to the admissibility of evidence regarding measurements obtained using the device. In *Canady*, we concluded that "the district court erred in allowing [a witness] to testify as to the exact temperature of the water because there was no proof that the thermometer was accurate." 263 Neb. at 563, 641 N.W.2d at 53. In *Chambers*, we concluded that a trial court committed "reversible error in admitting evidence of speed calculated [in part] through information from [a] stopwatch" when there was not adequate evidence to verify the accuracy of the stopwatch. 233 Neb. at 242, 444 N.W.2d at 671.

In rejecting Richardson's argument based on *Chambers*, the Court of Appeals distinguished *Chambers* by explaining that *Chambers* involved a speeding violation and that relevant statutes contained specific requirements for verification of accuracy of speed measurement devices. The Court of Appeals erred in distinguishing *Chambers* on such basis. In *Chambers*, we determined that the stopwatch at issue was not a "speed measurement device" under the statute, because it measured only time but not distance, and that therefore the statutory requirements did not apply. Even though this court determined that admission of the evidence was not governed by the statute,

this court nevertheless required foundation regarding the accuracy and proper functioning of the stopwatch before admitting evidence obtained using the device, because the evidence was "information derived from an electronic or mechanical measuring device." The holding in *Chambers* was not based on the statute; instead, it was based on principles applicable to "information derived from an electronic or mechanical measuring device." Because the scale at issue in the present case is also an "electronic or mechanical measuring device," we conclude that the principles set forth in *Chambers* and later in *Canady* are applicable here.

The Court of Appeals found that two cases cited by the State—*State v. Smith*, 187 Neb. 152, 187 N.W.2d 753 (1971), and *State v. Infante*, 199 Neb. 601, 260 N.W.2d 323 (1977)—were more applicable precedent than *State v. Chambers*, 233 Neb. 235, 444 N.W.2d 667 (1989), and *State v. Canady*, 263 Neb. 552, 641 N.W.2d 43 (2002). *Smith* and *Infante* both involved convictions for controlled substance violations in which testimony regarding the weight of the substance was at issue. The Court of Appeals appeared to accept the State's argument that *Smith* and *Infante* stood for the proposition that in a case where the weight of a controlled substance was at issue, "the accuracy of the scale was a matter of weight and credibility, not admissibility" and that "the credibility of the testimony and the reliability of the scale were issues for the jury." *State v. Richardson*, No. A-11-921, 2012 WL 4795684 at *5 (Neb. App. Oct. 2, 2012) (selected for posting to court Web site). Based on this understanding of precedent, the Court of Appeals concluded that the district court did not err when it rejected Richardson's foundation objection.

Both *Smith* and *Infante* predate *Chambers* and *Canady*. The posture and record of objections in *Smith* and *Infante* differ from *Chambers* and *Canady*. We do not read *Smith* and *Infante* as saying that a court should not resolve the initial evidentiary issue of whether there was sufficient foundation regarding the accuracy of the scale to admit evidence of weight measured using the scale. To the extent *Smith* and *Infante* are inconsistent with the principles in *Chambers* and *Canady*, *Smith* and *Infante* are disapproved.

We conclude that the proposition from *Chambers* and *Canady* to the effect that foundation regarding the accuracy and proper functioning of the device is required to admit evidence obtained from using the device applies when the electronic or mechanical measuring device at issue is a scale used to weigh a controlled substance. We note that our application of the proposition in this context is consistent with various other states that require foundation regarding the accuracy of a scale prior to admitting evidence regarding weight measured by using the scale. See, *Com. v. Podgurski*, 81 Mass. App. 175, 961 N.E.2d 113 (2012); *State v. Manewa*, 115 Haw. 343, 167 P.3d 336 (2007); *State v. Manning*, 184 N.C. App. 130, 646 S.E.2d 573 (2007); *State v. Taylor*, 587 N.W.2d 604 (Iowa 1998); *State v. Dampier*, 862 S.W.2d 366 (Mo. App. 1993); *People v. Payne*, 239 Ill. App. 3d 698, 607 N.E.2d 375, 180 Ill. Dec. 481 (1993).

*Foundation Was Not Sufficient to Admit Pillard's*
*Testimony Regarding Weight Under the*
*Circumstances in This Case.*

Having determined that the *Chambers/Canady* standard applies, we consider whether there was adequate foundation in this case to admit Pillard's testimony regarding the weight of the cocaine. We conclude that there was not.

As an initial matter, we note that our analysis in this case demonstrates the importance of informative foundational evidence regarding the accuracy and precision of the scale. In particular, we note that the weight to which Pillard testified was 10.25 grams, which is only .25 of a gram above the statutory minimum to make the offense a Class ID felony. In this regard, we note that the Court of Appeals of North Carolina has stated that "ordinary scales, common procedures, and reasonable steps to ensure accuracy must suffice" to establish foundation for evidence of weight of a controlled substance. *State v. Diaz*, 88 N.C. App. 699, 702, 365 S.E.2d 7, 9 (1988). See, also, *State v. Manning, supra*. In *Diaz*, the court concluded that the foundation provided in that case was adequate for admission of evidence of weight. However, in reaching such conclusion, the court noted that the weight of marijuana

in that case "exceeded the minimum weight charged by more than 30,000 pounds" and stated that "'the weight element . . . becomes more critical if the State's evidence of the weight approaches the minimum weight charged.'" 88 N.C. App. at 702, 365 S.E.2d at 9.

In a similar vein, the Missouri Court of Appeals in *State v. Dampier*, 862 S.W.2d at 373, concluded that it was within the trial court's discretion to admit evidence as to weight based on foundation provided by a pharmacist whose scales were used to weigh marijuana and who "merely identified the agencies which check his scales, described the frequency (or infrequency) that this is done, and related that he had observed no damage, chips or nicks in any of his weights since the last inspection" and commented that "to his knowledge, they had not malfunctioned in the past fifteen years." However, in reaching this conclusion, the court noted that only one-half of one of four bags of the controlled substance had been weighed and was found to be over the required minimum; the court stated that because the weight of all four bags was therefore clearly over the minimum, the "case did not hinge on meticulously precise weight." *Id.* at 374.

The present case differs from the North Carolina and Missouri cases described above, because Pillard's testimony was that Richardson possessed 10.25 grams, which was close to the 10-gram minimum required to make the offense a Class ID felony. Therefore, this is the type of case noted by the North Carolina and Missouri courts where the precision of the scale used to weigh the substance was of greater importance. Although the lack of foundation present in this case might conceivably have been harmless in a case where the weight was well above the minimum, in the context of the present case, we conclude that more precise foundation regarding accuracy of the scale was required.

As noted above, the trial court sustained Richardson's initial foundation objection to Pillard's testimony regarding weight. The State thereafter questioned Pillard further regarding the scale. Pillard testified that the calibration was checked once a week by one of the chemists in the laboratory and that the calibration would have been checked within at least a week of

the time the substance in this case was weighed. She testified that if there was any inconsistency with the calibration, the scale would be taken out of use until the manufacturer came in to repair it. She further testified that in the time she had been at the laboratory, she had never had any issue with the calibration of the scale, and that she was not aware of any issue with the calibration of the scale at the time she tested the cocaine in this case. The court then admitted the evidence.

A court's decision regarding sufficient foundation inevitably involves discretion, and we do not attempt to catalog the manner by which proper foundation is to be laid. However, at a minimum where accuracy is claimed based on calibration, the details of the object by which calibration is satisfied should be described. Although Pillard testified that the calibration of the scale in the laboratory was checked once a week, she did not provide further testimony regarding the procedures used to perform such calibration and whether such calibration involved testing against a known weight. We note that in *Com. v. Podgurski*, 81 Mass. App. 175, 187, 961 N.E.2d 113, 123 (2012), the Appeals Court of Massachusetts concluded that "where the record [was] silent on any comparison involving a test object of known measure," sufficient foundational evidence of accuracy had not been set forth, "thereby rendering the weights measured by the scale inadmissible." The court in *Podgurski* noted that measurement against a known quantity was consistent with the dictionary definition of "calibrate" which it stated as "'[t]o check, adjust, or determine by comparison with a standard (the graduations of a quantitative measuring instrument).'" *Id*. (citing American Heritage Dictionary of the English Language 264 (4th ed. 2006)). Although Pillard stated the calibration was checked, the accepted definition of calibration includes comparison to a standard, and thus the foundation in this case should have specifically addressed whether the scale was tested using a known reliable weight. Furthermore, Pillard spoke only of general procedures used in the laboratory without addressing the actual testing done on the specific scale used in this case. She simply stated the general procedures and indicated that there was nothing to make

her think such procedures had not been followed or that there was a problem with the scale.

We conclude that Pillard's testimony regarding general procedures used by the laboratory was not sufficient foundation to admit her testimony regarding the weight of the cocaine. The foundation needed to be more specific to the particular scale used in this case, such as the time period during which the scale was calibrated prior to the weighing of the cocaine and greater detail regarding the procedures used in the calibration, including specifically whether the scale was tested against a known weight.

We conclude that the district court abused its discretion when it determined that the foundation was sufficient in this case. The court therefore erred when it admitted Pillard's testimony regarding the weight of the cocaine. Having determined admission of the evidence was in error, we next consider whether such error was harmless.

*The Admission of Evidence Regarding the Weight of the Cocaine Was Not Harmless Error.*

[3,4] Evidentiary error is harmless when improper admission of evidence did not materially influence the jury to reach a verdict adverse to substantial rights of the defendant. *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012). Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id*.

Pillard's testimony regarding weight was clearly crucial to determining the grade of the offense. The jury found that the weight was 10.25 grams, and Pillard's testimony was the only evidence from which this amount could be found. The jury obviously accepted the weight stated by Pillard. This finding was not only relevant to the grading of the offense; it was also relevant to Richardson's guilt for the distribution offense charged. We have stated that the quantity of a controlled

substance possessed by a defendant can be circumstantial evidence of the defendant's intent to distribute such controlled substance. See *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Therefore, Pillard's testimony regarding the weight of the cocaine could have influenced the jury's finding that Richardson possessed the cocaine with the intent to distribute it.

We conclude that the error in admitting Pillard's testimony regarding weight without sufficient foundation regarding the scale used to determine the weight was not harmless and that therefore it requires reversal of Richardson's conviction for possession of controlled substance, cocaine, with intent to distribute.

*A New Trial May Be Had on Remand.*

[5] Having found reversible error, we are required to determine whether all of the evidence admitted by the district court was sufficient to sustain Richardson's conviction. The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict. *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012).

The evidence admitted showed that Richardson possessed a substance that was determined to be cocaine. Based on the erroneously admitted testimony by Pillard, there was evidence that the quantity of cocaine involved was 10.25 grams, which, as discussed above, contributed to the jury's findings of the weight involved for the purpose of grading the offense and that Richardson had intent to distribute. The evidence admitted by the trial court, properly or not, was sufficient to sustain a guilty verdict of the crime charged, and the Double Jeopardy Clause does not bar retrial.

## CONCLUSION

We conclude that the district court erred when it admitted Pillard's testimony regarding the weight of the cocaine without sufficient foundation regarding the accuracy of the scale. We further conclude that such error was not harmless. We therefore reverse the decision of the Court of Appeals which affirmed

Richardson's conviction and sentence. We remand the cause to the Court of Appeals with directions to reverse Richardson's conviction and sentence and to remand the cause to the district court for a new trial.

Reversed and remanded with directions.

———————————

James E. Robertson et al., appellants and cross-appellees, v. Jacobs Cattle Company, a partnership, et al., appellees and cross-appellants.

___ N.W.2d ___

Filed May 10, 2013.    No. S-12-370.

1. **Partnerships: Accounting: Appeal and Error.** An action for a partnership dissolution and accounting between partners is one in equity and is reviewed de novo on the record.

2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations. But when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.

3. **Statutes.** Statutory interpretation presents a question of law.

4. **Partnerships.** The interpretation of a partnership agreement presents a question of law.

5. **Judgments: Appeal and Error.** An appellate court independently reviews a lower court's rulings on questions of law.

6. **Partnerships: Time.** The Uniform Partnership Act of 1998 applies to any Nebraska partnership, including those formed prior to January 1, 1998.

7. **Partnerships.** Under the Revised Uniform Partnership Act, the dissociation of a partner does not necessarily cause a dissolution and winding up of the partnership's business. Generally, the partnership must be dissolved and its business wound up only upon the occurrence of one of the events listed in § 801 of the Revised Uniform Partnership Act, upon which Neb. Rev. Stat. § 67-439 (Reissue 2010) is based.

8. ____. Where a court determines that the conduct of one or more partners constitutes grounds for dissociation by judicial expulsion under Neb. Rev. Stat. § 67-431(5)(c) (Reissue 2010) and dissolution under Neb. Rev. Stat. § 67-439(5)(b) (Reissue 2010), and there are no other grounds for dissolution, the court may in its discretion order either dissociation by expulsion of one or more partners or dissolution of the partnership.

9. **Statutes: Appeal and Error.** The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.